## MAUNSEL WHITE & Co. v. MARY RUCKER.

It was agreed by public act between the parties, that defendant should ship her crops of cotton to the house of plaintiffs, for sale, and that the balance of proceeds, after paying her instalments in bank and plantation expenses, should be appropriated to the payment of certain notes, as they fell due. *Held;* This stipulation did not impose upon the plaintiffs an obligation to ascertain at their peril the details of defendant's accruing indebtedness for instalments in bank and plantation expenses, and when so ascertained, to discharge them. By it, the plaintiffs were bound to honor the draft of defendant in favor of the bank for instalments due, and pay orders for plantation expenses, to the extent of the funds in their hands proceeding from the sales of defendant's cotton crops.

APPEAL from the District Court of the parish of Pointe Coupée, *Farrar*, J. *Brewer & Collins*, for plaintiffs and appellants; *Ratliff & U. B. Phillips*, for defendant.

BUCHANAN, J. This is a suit upon four notes secured by mortgage and upon an account. The plaintiffs pray for judgment for the amount of their claim, and that the same be decreed to bear a mortgage upon the property described in the notarial act annexed to their petition.

The defence is failure of consideration of the notes, and the prescription of five years.

Defendant also claims in reconvention twelve thousand dollars damages for violation of plaintiffs' contract with defendant, as contained in the mortgage.

This demand in reconvention, resting on the same facts with the plea of failure of reconsideration, they will be considered together.

The evidence shews that the parties appeared before a notary public on the 31st May, 1843, and the defendant acknowledged being indebted to plaintiffs in the sum of $6,088 63, for which she furnished the notes now sued on. She further declared, that it was understood and agreed between the parties *that she is to ship her crops of cotton to the house of Maunsel White & Co., at New Orleans, for sale, and that the balance of proceeds, after paying her instalments in bank and plantation expenses, shall be appropriated to the payment of the above stated notes, as they fall due.* And for the payment of the notes and interest, defendant mortgaged the property described in the act.

The defendant contends that the effect of the clause of the mortgage italicised above, was to oblige plaintiffs to pay the instalments of a mortgage debt of defendant to the Bank of Louisiana, as they should fall due, and to protect defendant's property from seizure by the bank under its said mortgage. We do not

find in the clause, nor in the context, evidence of such an obligation on the <span style="float:right">M. White & Co.<br><i>v.</i><br>Rucker.</span> part of plaintiffs. Undoubtedly, the proceeds of the crops of cotton were to be applicable in the hands of plaintiffs: 1st, to the payment of defendant's instalments in bank and the plantation expenses; 2d, to the discharge of her notes in favor of plaintiffs. But there was no authority given to plaintiffs, much less an obligation imposed upon them, to seek out and ascertain at their peril, the details of defendant's accruing indebtedness for instalments in bank and plantation expenses, and when so ascertained, to discharge them: in a word, to thrust themselves between defendant and her other creditors. The only reasonable interpretation to be given to this clause, is, that the plaintiffs were bound to honor the drafts of defendant in favor of the banks for instalments due, and her orders for plantation expenses, to the extent of the funds in their hands, proceeding from the sales of defendant's cotton crops ; having the right to retain only the surplus, on account of defendant's notes held by them.

The violation of the contract complained of by defendant, consists in this : that on the —— day of May, 1844, *J. N. Maynard*, cashier of the Branch of the Bank of Louisiana at St. Francisville, drew upon the plaintiffs for the sum of $2,042 59 in favor of the cashier of the mother bank, which draft was protested for non-acceptance, the drawees not being in funds. This draft is proved to have been for the curtailment and interest due from defendant to the bank, at its date. We think that the defendant has failed in establishing that the dishonor of this draft was a violation of the contract between the parties; not only because it was not drawn by defendant or by her authority, but also because it is proved and indeed admitted by the answer that the plaintiffs were really and truly not in possession of funds of defendant at the time, to an amount sufficient to cover this draft. It is clear that the possession by the drawee of funds of the drawer, does not create an obligation on the drawee to accept a bill for a larger amount than those funds; and there is no evidence that the bank offered to receive, or would have acquiesced in, an acceptance by plaintiffs to pay anything short of the face of the draft. In the usual course of business, the draft was presented by a notary to the drawee, and an unqualified acceptance was demanded. The account current also shews that plaintiffs paid drafts and orders of defendant, after the protest of the cashier's draft, to the full amount of funds in their hands, exclusive of the note of defendant, which matured May 18th, 1844.

The conclusions to which we have come upon the construction of the contract and its supposed violation, render it perhaps unnecessary that we should say anything about the proof of damages.

The decided impression left upon our mind by the whole evidence on this head, is that the defendant has suffered no damage whatever by the Sheriff's sale of the 3d August, 1844, in consequence of the understanding between the bank and *Mrs. Rucker*, respecting the property sold, which understanding, there is reason to infer, existed when that sale was made.

There remains to be considered the plea of prescription. Two of defendant's notes were more than five years past due, at the date of the citation in this case, which was the 14th March, 1851. One of those, to wit: the note due 18th March, 1844, is charged in the account current filed, as one of the items to defendant's debit. Including this item, the balance due plaintiffs by defendant, as per account rendered by the former on the 20th May, 1844, was $200 71 cts., afterwards increased by subsequent payments on defendant's account.

M. WHITE & Co.
v.
RUCKER.

We think that the note thus charged, merged in the general balance of account rendered, which, it will be observed, was for a far less sum than the face of the note; and that it cannot now be revived by plaintiffs for the sake of inferring an accessory obligation of mortgage: nor on the other hand, be treated, by defendant as a debt barred by prescription. The plaintiffs have prayed for a decree allowing them a right of mortgage upon the property of defendant described in the notarial act annexed to his petition, for the security of his claim.

The property has been sold by the Sheriff, in satisfaction of a prior mortgage, and appears to have produced no more than sufficient to discharge that prior mortgage. The record does not inform us that any certificate of the mortgages upon the property was produced and read at the Sheriff's sale, as required by article 678 of the Code of Practice: nor that the Sheriff gave any discharge to the purchaser of subsequent mortgages to that of the bank, according to article 708. The question of the existence of plaintiffs' mortgage might present difficulties, if the bank were a party to these proceedings; but as regards the defendant, no injury can result from considering it as still existing.

It is, therefore, ordered, adjudged and decreed, that the judgment of the court below be reversed, and that the plaintiffs and appellants recover of the defendant and appellee, $47,078 41 cts., with interest on $1,522 15, from the 18th March, 1846, at ten per cent. per annum; on $1,522 18, from the 18th March, 1847, at ten per cent. per annum; on $1,663 08, from the 14th March, 1851, at five per cent. per annum, and that the plaintiffs be decreed to have a conventional, quoad the defendant's mortgage upon the property described in the notarial act of the 31st May, 1843, annexed to the petition, from the date of the recording of said act to secure; $3,044 33 cts., with interest from the maturity of the two notes of defendant, due respectively on the 18th March, 1846, and the 18th March, 1847, and that the defendant and appellee pay costs in both courts.